Wait a second or two while the parties in our next case, United States v. Beach, come to the bench. Thank you, counsel. Just whenever you're ready. Good morning. May it please the court. Good morning, counsel. My name is attorney Ann Borgetti. I want to make it clear that I was not the trial lawyer on this case. William Beach was born Christmas Day of 1978. He's 45 years old. He was born in Hennepin County, Minnesota. One would think that someone born on Christmas Day would have a cherished life, but he's had anything but a cherished life. So he finds himself in Florida. He has a history of mental health problems. He has drug addiction. He gets in trouble. And he is charged with, he was indicted on one count of threatening a federal witness with death. And that witness is TM, Tanya Mollish. She was his girlfriend at the time. Counsel, it would be helpful to me. So there's really three arguments that are raised. If you can tell me which one you want to focus on, maybe is your best that you want to focus on? Well, I'd say the best was that this wasn't an official proceeding that he interfered. So let's talk about that. So let's assume for the moment that I completely agree with you that an official proceeding has to be one where the business conducted by it's a business conducted by a court or other official body. In other words, a police investigation can't be an official proceeding. Let's assume I agree with you on that. I think the definition I gave would that be one that you would agree with? Yes. Okay. Wasn't there evidence in the record that Ms. Mollish had met with the AUSA to review her anticipated grand jury testimony in preparation of there being an indictment for Mr. Smith? No. Detective Harrop did not testify to that? No, he did not testify as to grand jury, Your Honor. So I'm looking at pages – I'll start with page 24 of docket entry 60, which is the transcript of Detective Harrop's testimony. He testified, quote, so once again, we located Ms. Mollish. We were bringing her to the U.S. Attorney's Office to speak with her about the facts of the case to prepare for grand jury. Question, was her trial testimony reviewed in your presence with the federal prosecutor? Answer, yes, sir. Her trial testimony was reviewed as part of that grand jury presentation. Question, in other words, was what she would say to a trial jury reviewed? That is, questions asked of her and answers given. Answer, absolutely. Okay. Well, I guess I agree with you with what it says, but what was – You'd have to, right? So for argument's sake, if you – and that was what was argued at – in the trial, was it was grand jury that was interfered with. Well, the indictment just says official proceeding. Correct. And official proceeding, you and I agree, is any court proceeding of an official body, and if we look at the definition, it includes official proceedings in front of a district court judge, magistrate judge, et cetera, and there's specifically grand jury proceedings. So this seems to indicate both, doesn't it? I agree with that, but what did Mr. Beach know? Okay, so that gets to the second argument, which is intent. So let's go there, okay? Which I think that's probably my best argument. Okay, so that's why I asked you your best I wanted to focus on. So let's go to intent. So I agree with you. Arthur Anderson says there needs to be some nexus between there being an official proceeding, and you and I have now established that there is that, and what he knew of that official proceeding in relation to the threat. In relation to the threat. Okay, so let's go to. One transcript. All right, so now I want to go to the telephone call. This is the May 7th call. I'm looking at docket entry 36-1, and this is at page 6 of that. Miss Mollish tells him through the course of a very difficult phone call, frankly, quote, I went and talked to the federal dot, dot, dot, to the federal attorney. Beach, Mr. Beach. About what? Miss Mollish. That he wants me to be a witness. He said he went through everything over the case and wants me to be a witness and told me to be safe. And then not three or four lines after that, he calls her a lot of names and then says that I'm going to kill you. He called her the names first. He did. He called her some names. No, he called her the names after. He called names both, but there's some names called. And then he says, I have a gun out there, and I'm going to do what I'm telling him I'm going to do. So why is that? Why is an indication of her saying that I went to the federal prosecutor, he wants me to be a witness, and then the threat not at least an indication to a reasonable jury viewed in the light most favorable to the government, which we must at this stage, not an indication of a nexus between the threat and the official proceeding. What did Mr. Beach know? Well, it's not what he knew. It's what a reasonable jury would conclude from the fact that she says, he wants me to be a witness, and then the threat like five lines later of I want to kill you. Well, I would say that the term witness itself doesn't conclusively establish that Mollish would be providing. Let's assume I agree with you. So let's assume that I agree with you completely. But if there's two reasonable ways to read the word, and we're here with the standard of review that requires us to read it in the light most favorable to the government, then doesn't the standard of review dictate that we have to read it that way, as witness as in witness to an official proceeding of some sort? Because he doesn't need to know what proceeding. He doesn't even know if it's state or federal. He doesn't have to know any of it. He just has to know it's to some court proceeding somewhere. Well, I would take it in the context of where it happens. She's saying it's happening on the street. She doesn't go into any building. He asked her, did you go in somewhere? But let's talk about that because really the beginning of the conversation deals with her having a discussion with him about the fact that she's going to do a controlled buy. Right. Correct? And he tells her to basically walk away from that. Right? That's what he wants her to do. He wants her to walk away from that. Yes. And that we would both agree is not . . . it's interfering, but it's not interfering with an official proceeding because it's an investigation. Yes, Your Honor. Correct. The question I have though is at that moment in time when she then tells him that she went and talked to the federal attorney about being a witness, then the conversation turns. Right? Does it not? It turns to something else other than talking about the investigation of the controlled buy. But he doesn't . . . I think you're imputing knowledge to this man who's just . . . he's in jail. All he cares about is putting money on his phone, and he's not . . . I don't . . . he's not like some of the cases that you read. One was a judge that knew, you know, talking to a U.S. attorney, but she's talking to someone out on the street. These are street people. They're homeless. There was no . . . she wasn't served with papers. I think at one point he asked her, did you sign something? Was something official? And he specifically asked her, what is it you were asked to do? And it was nothing but a buy bust. Witness would seem to me to be one of those words that you don't need to be a real sophisticated Harvard Law School graduate in order to understand what the implications are. Am I wrong on that? No, Your Honor, but a witness . . . it's . . . If you want me to witness against somebody, the implication of that is fairly clear, is it not? I would say under the case law, and I think it's the Agala Court, that whatever . . . they found that the judge in Aguilar was found to be speculative. My concern is that where we have ambiguity, in other words where a statement or a transaction could be read in a certain way, that the standard of review, at least at this point, would indicate that we have to read it in favor of the government. But let me ask it this way. Let's assume that he's mad both about the buy bust and the fact that she's going to be a witness. That doesn't matter, right? In other words, as long as the motivation is in part about her being a witness, that would meet the nexus requirement? It's connected. Right. In other words, as long as it's one . . . Time, right. And what about what Judge Legoa said? In other words, the fact that the threat doesn't happen until she mentions being a witness. In other words, he's not happy about her doing the buy bust, but he's not using the threatening words at that point, and it's only at the point that he mentions witness that the threatening words come out. Does that indicate anything in terms of intent? This man is so volatile, and he's just so out there. I don't think he's really even listening to what the woman is saying. I mean, he's in the jail, all he cares about . . . He responds, though, be safe. The end of that sentence is he wants me to be a witness, and he told me to be safe. And he says, be safe? So he's clearly responding to what she's saying. Okay, but even after the threat, the next call is, you know, I love you again. Well, they clearly have a volatile relationship. Right. So . . . Thank you, Counsel. Okay, thank you. Thank you, Your Honors. May it please the Court. Julia Capusta for the United States. And I want to begin with the nexus requirement because, as Your Honors have touched on, well, under the nexus requirement, the United States was required to prove that Beach either knew of or reasonably could foresee an official proceeding, and they had to prove that he knew his actions were likely to affect it. As for the official proceeding required, we have never disputed or argued that the criminal investigation is the official proceeding. But can I ask you a question? Other than this phone call, which is the 12-18 phone call, there is no other threat that he made? No, Your Honor. So why should we not read this as lacking intent if he has this communication with her, and he says to her, you know, walk away, get away from, don't do the controlled by, then he basically threatens her, but is it really threatening her based on the interference or is it threatening her because he thinks that he's been, quote, disrespected? I believe it's based on the interference and the knowledge that she's going to be a witness because in several of the calls prior to this, I think as early as April 29th, she tells him, Detective Legassi called me. He wants me to do this controlled by with C. He varies between being supportive or against it based on his mood, based on whether he feels she's done enough to help him get out of his situation. As Your Honor has recognized, it is not until the moment that she tells him, I met with a federal attorney and he wants me to be a witness, that he turns, tells her he has a gun hidden, and tells her he is going to kill her if she goes through with it. Witness is doing a lot of work there. I mean, you're then reading that to mean that that a reasonable, even under the standard of being favorable to you, that a reasonable person or beach subjectively then knew that that meant that this turned into something not just a by-bust, which had been every proceeding conversation that they knew about and some ancillary cooperation about IDing someone on a video, but now was I am going to give testimony in front of a court. That seems a bit of a stretch. Yes, Your Honor, and I think that's not the only evidence in this record. What is the other evidence? So on February 2018, Detective Harrop testified that he first met with Mowlish and Beach and he told them that they were targeting Corey Smith for causing the death of Bradley Dykes and he told them that Tanya Mowlish was a key witness in this case and in this investigation. And what date was that? That was February 9, 2018. And then on March 23, 2018, Detective Harrop again met with Tanya Mowlish and William Beach was also present during this meeting. And he had evidence of Corey Smith using the EBT card of the victim and he had wanted Tanya Mowlish. But can I ask you a question? Because this hearing or this recorded conversation takes place in December of 2018. That's a long time for someone to think that this person is now going to be testifying and be a witness at a grand jury proceeding. Your Honor, I believe it took place on May 7, 2018. Oh, you're right. I apologize. So I think a lot of what this case revolves on is what is the distinction between interference with a criminal investigation that is unconnected with an official proceeding versus interference with an official proceeding. And Wellman goes to that and it says there needs to be evidence in the record beyond speculation that the jury can reasonably find that the defendant reasonably could have foreseen an official proceeding. And I believe here in Wellman the court kind of said, well, if there's knowledge that there's a target of the investigation and that the government is building a case against that person. So in addition to the fact that we have... But do you have to have something more? Like, for example, with the controlled by, he tells her, don't do it, walk away. Right? Do you have to have something more? Do you have to have some specific intent where someone articulates? Perhaps he hires someone to say, if you testify, I'm going to kill you or I'm going to kidnap your child or do something if you testify. I mean, is there something more that's required? Because here you're holding someone responsible and there has to be some kind of specific mens rea. Yes, Your Honor. And I think that the nexus requirement tells us that it has to be... his actions are likely to affect the official proceedings. And here with his knowledge that Tanya Mullish had met with a federal attorney and that the attorney wanted her to be a witness, a jury can reasonably find that that is evidence that he had knowledge that by threatening to kill her for going through with it, he knew that he would likely to affect the official proceedings against Corey Smith. We're operating under the assumption that official proceeding is a court, some sort of court proceeding. Do you agree with that? Is that the position of the government here? Are you conceding that? Yes, Your Honor. We have never argued that the criminal investigation is the official proceeding in this case. And, in fact, the jury was only instructed on the definition under 1515A1A. It was not instructed on the definition under 1515A1C. So our entire theory of the case has been that it is the proceeding before a court or judge of the United States or proceeding before a federal grand jury that was the official proceeding in this case. And that's what the jury was required to find in order to find Beach guilty of this offense. Do you agree there's some circuit authority to the contrary? In other words, that under the definition for an agency that an investigation would qualify? Yes, Your Honor. I do think there is some nuance to that argument and there is argument to the contrary. I just think in terms of this case, we have never relied on that definition as necessary to prove Beach's guilt under the statute. Thank you. After the May conversation of 2018, were there any other communications between Beach and Mollish where Mollish talked about being a witness again? No, Your Honor. The only time she talks about being a witness is on the May 7th call where he threatens to kill her. And again, we have the testimony of Detective Harrop also saying that he told Beach on their first meeting in February 2018 that Tanya Mollish was a key witness. Those are the two pieces of evidence that rely on the witness. But they did have communications after the May 2018? There's one other call on the record that only a few minutes later, after Tanya Mollish had walked away, she called him again. And she was crying and hysterical and saying, what do you want me to do? And he was still upset with her for disrespecting him and doing everything. Did he tell her in that conversation not to testify before the grand jury? No, he did not. Talk to me about the ID issue. I think it's properly preserved, so put aside preservation for a moment. Yes, Your Honor. I don't believe any error was made here because there's sufficient evidence for a jury to reasonably find that Beach was the person on the call threatening Tanya Mollish. First, the detective identified Beach in court. He testified that he had met with... That's not a witness. Yes, that happened, but that's not that he's the person on the phone. So make the connection for me. So he testified to the jury that he had met with Beach twice in person, so he's familiar with him. He testified that at the time that Mollish received the call, they were sitting next to each other in a single cab pickup truck with the windows rolled up. He testified that he knew that Tanya Mollish referred to Beach as Billy. He testified that before she answered the call, she turned to him and said, Billy is calling me. He also testified that he heard Billy identify himself on the call over the phone. That's really the critical piece, right, is that he heard at least the first portion of the call and that voice he said was Billy because he had talked to him before, right? Yes, Your Honor, and I do believe the call itself also identifies him. Once again, he identifies himself as Billy. Detective Harrop also told the jury that the two of them were in a relationship at that time, and it bears out over the course of the call. She tells him she loves him. She calls him baby. She said she would do anything for him. So I think there was sufficient evidence before the jury for them to reasonably find that Beach was a person on the phone call threatening to kill Tanya Mollish. And just one more time, this official proceeding ties into the nexus again. The question is? Can I ask you a question? Yes, Your Honor. Because in the conversation of May 2018, Beach is very specific when she, Mollish tells him that she agreed to make a buy, and he tells her, she tells him for what, and he specifically says, no, you're not, you're not doing it. So in that one, he's really telling her, you're not going to do that, I'm not allowing you to do that. But although he threatens her, he doesn't say that he's threatening her because she's going to be a witness. So I guess that's, I'm trying to understand what your position, is it just because he made a threat? No, Your Honor, it's the escalation, because as I said before, he knew since as early as April 29th that she was going to be, or that the detectives had wanted her to make a controlled buy. And he at some points is supportive of it because he believes that the money will bond him out. On that day, he happened to not be supportive of it, and he did not want her to go through with it. But once again, it is not until she tells him specifically, I met with a federal attorney and the attorney wants me to be a witness, that's what escalates. I understand that, but my point is that in the conversation that they have, he's very specific when he doesn't want her to do something. Yes, Your Honor. So I guess my question is, how do we, how can we, how can the government say or prove that when he threatens her, he is threatening her not just because they have a volatile relationship and he thinks he disrespected her in general, or it's because she's going to testify in an official proceeding. Because when she's doing the controlled buy, he's telling her, you're not doing that. Yes, Your Honor. Get out of the car. I believe that there are interpretations of the evidence, but at the end of the day, the evidence is not required to exclude every reasonable hypothesis of innocence or be inconsistent with every conclusion except that of guilt. Given the fact that less than a minute before he made the threat, Tanya Mullis tells him she met with a federal attorney and she tells him the attorney wants him to be a witness. I think the evidence in the light most favorable to the government is sufficient evidence for a jury to reasonably find that he knew or could reasonably foresee an official proceeding at the time he made the threat and that the threat was directed towards her testimony in that official proceeding. Your Honor, unless you have any other questions, I would ask that you affirm the federal witness tampering conviction of William Beach. Thank you. Thank you, counsel. We'll hear the reply, the rebuttal from the appellant. Your Honors, the trial counsel didn't object to the hearsay identification. He didn't object that there was no foundation laid for the recording. There was no business record entered. Let's assume for the moment it is hearsay. I'm not 100% sure it is, but let's assume for the moment that his testimony would have been hearsay. If it's not objected to, that's evidence that the jury had before it in which to make a finding and a determination that it was Mr. Beach on the phone, right? Yes. There's at least to me some evidence in the record. I agree there isn't a lot for ID. There is not. But I think if the officer testifies, I heard the first part of the conversation and I have been in touch now with Mr. Beach for a couple months. I think he had met with him at least twice by that point, and I heard his voice and that was him on the phone. I think that's probably enough to make an identification, at least with regard to that call, right? Well, as to Mr. Beach, I'm not agreeing with you, but as to Mr. Beach possibly, but what about Ms. Mahler? She didn't testify either. They chose to just go through with one witness, this detective. And just to get back to the- Probably would have taken the Fifth Amendment. Probably. If she's an aider and abetter to a drug transaction that wound up in a death, the court would have had to have advised her, I would think. Yes, Your Honor. Given her intelligence, et cetera, et cetera. That she testified at her own risk. Right. So the reality is she's probably not going to testify. But she did. At the end of the day. But we don't know that. Right. Yeah. But in reality what happened, Your Honor, is she did testify in the drug dealer's trial that happened. And he was convicted as charged with the distribution causing the fatal death. Not the death, yeah. No, he was charged. Yeah, I understand. And he was convicted of that. But what happens is there's two disks that are put into evidence. Okay? I think, don't quote me on this, it's Exhibit 8 and Exhibit 7. And somehow they get switched in, the disks get switched into what sleeve they go into. You had to stay by the microphone there. Oh, I'm sorry. And so what happens is it goes back to the jury. And I believe what the jury heard and they were asking about, which was not entered into evidence, was the February interaction with law enforcement. That law enforcement taped. And so this jury heard that, heard a little bit of it, and then it wasn't admitted. But the other exhibit was admitted. It was switched. So the judge said that they should not have heard that evidence. It wasn't admitted. And it went to bolster Ms. Mollish's testimony. So she gave that gentleman a new trial, Mr. Smith. And then the gut. None of that's before us. None of that's before you, but I just would like you to know that that gentleman who caused the death, okay, he got time served, two years. The government agreed to let him plead to a lesser included. This gentleman is doing 8.25 years. I don't think that's right and I don't think that's fair. And I think you should know that. Thank you, Counsel. We appreciate both sides' presentations. And Ms. Borghetti, we know that you're court appointed and we very much appreciate your court appointment. Thank you so much.